IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25–cv–00805–GPG–MDB

THIN AIR GEAR, LLC,

    Plaintiff,

v.

CYBERLUX CORPORATION d/b/a CATALYST MACHINEWORKS, LLC,

    Defendant.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Plaintiff's Motion for Entry of Default Judgment (["Default Motion"], Doc. No. 18) and the parties proposed Order Granting Stipulation for Final Judgment (["Joint Stipulation"], Doc. No. 21). After reviewing the filings, the Court **RECOMMENDS** that the Default Motion be **GRANTED** and the Joint Stipulation be **DENIED as moot**.

### BACKGROUND

Plaintiff initiated this action on March 12, 2025, asserting claims for breach of contract, unjust enrichment, and civil theft in connection with Defendant's alleged failure to make payment on a purchase agreement for 2,100 "wheeled drone kit bags" ("drone bags"). (*See generally* Doc. No. 1.) Plaintiff has delivered 1722 drone bags to Defendant's warehouse in Texas, and is holding the remaining 378. (*Id.* at ¶¶ 9–10.) As of April 30, 2025, the balance due

on the contract was $406,946.18, plus a 1.5% monthly late fee. (*Id.* at ¶ 12.) Plaintiff seeks the outstanding balance on the contract, plus treble damages pursuant to Colo. Rev. Stat. § 18-4-405, attorney's fees and costs, and interest. (*Id.* at 5.)

Defendant has not appeared or otherwise defended itself in this action. On April 28, 2025, the Clerk of Court entered default against Defendant, and on May 16, 2025, Plaintiff moved for default judgment.[1] (Doc. Nos. 16; 18.)

On June 9, 2025, Robert W. Berleth entered a Notice of Receivership on behalf of Defendant. (["Notice" or "Notice of Receivership"], Doc. No 20.) In the Notice, Mr. Berleth advised the Court he had been appointed "as Receiver to assume control over all assets of Cyberlux Corporation" in Cause No. 2024-48085, styled *Atlantic Wave Holdings, LLC et. al. v. Cyberlux Corporation, et. al*, in the 129th Judicial District Court in Harris County, Texas." (*Id.* at ¶ 1; *see also id.* at pg. 5–36 (a copy of the Harris County order appointing Mr. Berleth as Receiver).) Mr. Berleth further stated that the claims in this litigation are subject to his control as Receiver. (*Id.* at ¶ 2.) Then, on June 24, 2025, Plaintiff filed the Joint Stipulation, which is signed by Plaintiff's counsel and Mr. Berleth. (Doc. No. 21.) The filing, styled as a proposed order, indicates that "Cyberlux has no legitimate dispute to the amounts claimed or default judgment," and Mr. Berleth and Plaintiff have agreed "judgment should be entered against Defendant in the total amount of $1,224,275.14." (*Id.* at ¶ 2.) The parties provide the following calculation:

---

[1] Plaintiff's Default Motion fails to include any analysis as to the claims brought in this matter or the Court's jurisdiction over Defendant. Normally, under such conditions, the Court would recommend that the Default Motion be denied without prejudice. However, because Defendant concedes the claims brought against it and the parties agree on a damages figure in the Joint Stipulation (Doc. No. 21), the Court recommends the Default Motion be granted.

2

| | | |
|---|---|---|
| A. | Underlying contract obligations<br>$406,946.18 x 3 (C.R.S. § 18-4-405): | $1,220,838.54 |
| B. | Attorney fees pursuant to C.R.S. § 18-4-405: | $2,765.00 |
| C. | Costs pursuant to C.R.S. § 18-4-405: | $671.60 |
| | **Total** | **$1,224,275.14** |

The parties further agree that "the Receiver's fees are to be paid in accordance with paragraph 53 of the Order Appointing Receiver." (*Id.* at ¶ 3.) The parties seek a final order approving the Joint Stipulation and resolving the claims in this matter.

On August 4, 2025, the Court held a status conference to determine whether any other information might be relevant to the Court's decision. (Doc. No. 24.) The Court directed Plaintiff to transmit the notice of the conference to the Receiver, and counsel for Plaintiff confirmed that he did indeed transmit that notice. (Doc. Nos. 23; 24) The Receiver did not appear at the conference. *(*Doc. No. 24)

## LEGAL STANDARD

Default judgment is appropriate when a party fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). In other words, default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation omitted). "In that instance, the diligent party must be protected lest [it] be faced with interminable delay and continued uncertainty as to [its] rights." *Id*. at 732–33 (quotation omitted). The Clerk of Court may enter default judgment if the claim is for "a sum certain." Fed. R. Civ. P. 55(b)(1). In all other cases, as here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

3

In determining whether to enter default judgment, a court must first find it has jurisdiction. *Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1167–68 (D. Colo. 2023). If a court lacks jurisdiction—either subject matter over the action or personal over the defendant—default judgment cannot be entered. *Id*. at 1168. After confirming jurisdiction, a court must determine whether the well-pleaded allegations in the Complaint, along with any accompanying affidavits or exhibits, support a judgment on the claims against the defendant. *Id*.; *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

## ANALYSIS

### I. Jurisdiction

#### A. Service of Process

Proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the Court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Co.*, 969 F.2d 940, 943 (10th Cir. 1992).

Plaintiff filed an executed Summons on March 24, 2025. (Doc. No. 11.) The Summons indicates personal service was made upon Defendant via its registered agent on March 14, 2025. (*Id.*); *see* Fed. R. Civ. P. 4(h)(1)(B) (saying service upon a corporation may be accomplished "by delivering a copy of the summons and of the complaint to an ... agent authorized by appointment or by law to receive service of process"). Plaintiff also indicates that a Summons and Complaint were mailed to Defendant. (Doc. No. 18-3.) The Court therefore finds Defendant was properly served.

#### B. Personal Jurisdiction

"Under Colorado law, this Court may exercise personal jurisdiction to the full extent of the Due Process Clause of the Fourteenth Amendment." *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1197 (D. Colo. 2002). "To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have 'certain minimum contacts [with the jurisdiction] ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 319 (1945)). This minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 455 (10th Cir. 1996).

The Court does not have general jurisdiction over Defendant. General jurisdiction exists when a defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 & n. 9 (1984). Here, Defendant's place of incorporation and principal place of business is North Carolina (*id.* at ¶ 2), thus it cannot be considered "essentially at home" in Colorado, *see Geiger v. Chubb Indem. Ins. Co.*, 2024 WL 809896, at *3 (D. Colo. Feb. 27, 2024) ("A corporation is subject to general jurisdiction in 'its place of incorporation and principal place of business.'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)), moreover, neither the Complaint nor Default Motion includes any description of Defendant's business practices such that the Court could find it has continuous and systematic contacts with Colorado. (*See generally* Doc. No. 1.)

5

"Specific jurisdiction is present only if the lawsuit 'aris[es] out of or relat[es] to the defendant's contacts with the forum.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017)). "In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Bristol-Meyers*, 582 U.S. at 262). The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, if a defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987).

Here, the only allegations connecting Defendant to Colorado is its contract with Plaintiff—a limited liability company with a principal place of business and a member in Colorado—to produce drone kit bags in Colorado. (*See* Doc. No. 10.) "The Supreme Court has made it clear that forming a contract with an out-of-state party, without more, does not automatically establish sufficient minimum contacts with the out-of-state party. *Fairbrother v. Am. Monument Found., LLC*, 340 F. Supp. 2d 1147, 1154 (D. Colo. 2004) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985)).

That said, "[a]lthough agreements alone are likely to be insufficient to establish minimum contacts, 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state

6

for the consequences of their activities.'" *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (quoting *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.,* 488 F.3d 1282, 1287–88 (10th Cir. 2007)). To determine whether specific jurisdiction exists, the Court must examine the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *TH Agric. & Nutrition*, 488 F.3d at 479.

Here, based on the allegations and arguments in the Complaint and Default Motion, the Court knows relatively little about the parties' course of negotiations[2] or the terms of the contract. But the Court accepts as true, Plaintiff's allegations that it entered into a contract with Defendant to produce goods in Colorado, that were then shipped to Texas. (Doc. No. 1 at ¶¶ 6–14.) The limited information available to the Court makes this a close call, but ultimately the Court finds it sufficient to establish minimum contacts. Defendant "pursued a business relationship with a[n] [LLC] that was, at all relevant times, headquartered in Colorado." *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 680 (Colo. 2010); *see also Marquest Med. Prods., Inc. v. Daniel, McKee & Co.*, 791 P.2d 14, 15 (Colo. App. 1990) (finding personal jurisdiction where defendants "directed numerous representations" to plaintiff in Colorado). Moreover, because production was to be done in Colorado, Defendant "deliberately created continuing obligations with Colorado." *Found. for Knowledge in Dev.*, 234 P.3d at 680; *see also Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir.

---

[2] Plaintiff has not made any allegations regarding the nature or extent of the negotiations between it and Defendant. The Court merely presumes some discussion must have occurred prior to reaching agreement.

2005) (finding purposeful availment in a contract case, not by mere fact of contract, but by creating continuing obligations with a forum-state business which performed invoicing and shipping operations on the defendant's behalf). The Court finds that Defendant's "contacts here [were] not 'random, fortuitous, or attenuated' in nature and sufficiently establish that [Defendant] purposefully availed [itself] of the privilege of conducting business in Colorado." *Found. for Knowledge in Dev.*, 234 P.3d at 681 (finding minimum contacts where the defendant "had numerous ... contacts with Colorado," "[t]he agreement required that significant work be performed in Colorado," and payment was being made to a Colorado company).

Accordingly, the Court turns to the second prong of its specific jurisdiction analysis, reviewing whether "the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010). A court should determine whether exercise of jurisdiction is reasonable in light of the circumstances surrounding the case by considering:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Pro Axess, Inc.*, 428 F.3d at 1277.

All five factors weigh in favor of finding personal jurisdiction over Defendant. First, the burden factor weighs against Defendant because Defendant "has not appeared and has not asserted any argument that it will be unduly burdened by being required to litigate in this forum." *Madison v. Avery*, 2021 WL 4947239, at *9 (D. Colo. Aug. 9, 2021). Second, the State of Colorado has great interest in resolving a dispute that concerns alleged harm to a Colorado

8

company caused by a non-Colorado company. *See OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). Third, litigating in this forum affords Plaintiff convenient and effective relief, particularly where Defendant has not appeared to defend against these claims, and if Plaintiff were to start anew in a different jurisdiction—and Defendant failed to defend again—Plaintiff would have to go through the same process twice. Fourth, if Defendant were to respond in this case, and should Plaintiff need to call witnesses at trial, many of them would likely reside in Colorado, rendering Colorado an efficient forum for resolving the dispute. Fifth, "keeping this case in Colorado would not 'affect[ ] the substantive social policy interests of other states or foreign nations.'" *Eighth Dist. Elec. Pension Fund v. Teter Indus., Inc.*, 2023 WL 3819339, at *4 (D. Colo. June 5, 2023) (quoting *Madison v. Avery*, 2021 WL 4947239, at *9 (D. Colo. Aug. 9, 2021), *report and recommendation adopted*, 2021 WL 12148404 (D. Colo. Aug. 27, 2021).

Accordingly, the Court finds it has personal jurisdiction over Defendant.[3]

### C. Subject Matter Jurisdiction

Plaintiff alleges the Court has diversity jurisdiction over the case under 28 U.S.C. § 1332. (Doc. No. 1 at ¶ 4.) Under section 1332(a)(1), "[t]he district courts shall have original

---

[3] Though the Court finds it need not ultimately decide the issue, the finding of personal jurisdiction is buttressed by the fact that Defendant has arguably waived its right to challenge personal jurisdiction by filing the Joint Stipulation in which it says it "has no legitimate dispute to the amounts claimed or default judgment." (Doc. No. 21 at 1); *see Healthbookplus Holdings Inc. v. Jardine*, 2024 WL 4227659, at *2 (D. Colo. Sept. 18, 2024) ("Personal jurisdiction, however, is a personal right that a defendant can waive ... [and] in the absence of a motion to dismiss, a party's continued participation in litigation is inconsistent with an assertion of lack of personal jurisdiction." (quoting and citing *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 2000 WL 147392, at *2 (10th Cir. Feb. 4, 2000))).

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

In its Amended Corporate Disclosure Statement, Plaintiff says it has two members, Mark Lewis, a citizen of California, and Mike Brown, a citizen of Colorado. (Doc. No. 10.) Plaintiff further alleges that Defendant is incorporated in North Carolina with a principal place of business in North Carolina. Accordingly, Plaintiff is a citizen of California and Colorado, *see Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) ("[I]n determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members"), and Defendant is a citizen of North Carolina, *see* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Thus, the parties are diverse.

Moreover, more than $75,000 are at issue in this case. Indeed, Plaintiff seeks over $400,000 in contractually obligated payments.

Accordingly, the Court find it has subject matter jurisdiction over this case.

**II.    Merits**

Generally, the Court would turn to consider whether Plaintiff has stated claims for relief and, if so, calculate an appropriate damages amount. Here, however, the parties' Joint Stipulation eliminates any need for the Court's analysis. The Joint Stipulation indicates Defendant "has no legitimate dispute to the amounts claimed or default judgment." Moreover, the Joint Stipulation notes that the parties have agreed to the following damages calculation:

| | | |
|---|---|---|
| A. | Underlying contract obligations $406,946.18 x 3 (C.R.S. § 18-4-405): | $1,220,838.54 |
| B. | Attorney fees pursuant to C.R.S. § 18-4-405: | $2,765.00 |
| C. | Costs pursuant to C.R.S. § 18-4-405: | $671.60 |
| | **Total** | **$1,224,275.14** |

## CONCLUSION

For the foregoing reasons, the Court

**RECOMMENDS** that the Motion for Entry of Default Judgment (Doc. No. 18) be **GRANTED**, and Plaintiff be awarded $1,224,275.14 in damages. The Court further

**RECOMMENDS** that the Joint Stipulation (Doc. No. 21), though accounted for herein, be **DENIED as moot**. The Court further

**RECOMMENDS** that this case be closed.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's

11

proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 7th day of August, 2025.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge